David BURROWS, et al., Plaintiffs,

v.

REDBUD COMMUNITY HOSPITAL DISTRICT, et al., Defendants.

No. C–96–4345 SI.

United States District Court, N.D. California.

Jan. 13, 1998.

Order On Reconsideration in Part May 5, 1998.

Richard J. Massa, Massa & Associates, Lakeport, CA, for Plaintiffs.

Sonja M. Dahl, Thomas J. Donnelly, Anderson, Galloway & Lucchese, Walnut Creek, CA, for Adventist Health, Inc.

John S. Gilmore, Goldsberry, Freeman & Swanson, Sacramento, CA, for Adventist–Redbud Hospital and Michael H. Schultz.

W. David Walker, Craddick, Candland & Conti, Danville, CA, for Mark Freeman, M.D.

## ORDER REGARDING APPLICABILITY OF CALIFORNIA EVIDENCE CODE § 1157

ILLSTON, District Judge.

In their objections to a number of plaintiffs' discovery requests, defendants Redbud and Adventist raised claims of privilege under California Evidence Code § 1157, which substantially limits discovery into the proceedings and records of hospital medical staffs concerned with evaluation and improvement of the quality of care in a hospital.

During an earlier discovery conference, plaintiffs sought to compel responses to the challenged discovery requests, contending that the limitations imposed on California courts by § 1157 do not apply in federal court.

Plaintiffs' then-pending discovery disputes were partially resolved by this Court's order filed November 3, 1997. However, at that time Superior Court Judge Warren had under submission the question of whether Evidence Code § 1157 applied in the state criminal case pending against Dr. Schug: prosecutors were seeking, and defendant Schug was resisting, production of such records. In the interest of protecting Dr. Schug's right to a fair criminal trial, this Court refrained from ruling on the applicability of § 1157 in the federal context until the state court had issued its ruling on the matter.

On January 2, 1998, Judge Warren issued a ruling, holding § 1157 was inapplicable in the criminal context presented there, thereby allowing prosecutors to subpoena hospital records claimed to be privileged under § 1157. *In re Search Warrant No. 13489,* San Francisco Superior Court, 1/2/98. Given Judge Warren's ruling, this Court is no longer constrained by the impact its ruling on this issue might have on Dr. Schug's state criminal case.

For the following reasons, the Court concludes that § 1157 is not applicable in this action.

## DISCUSSION

▋ Section 1157 provides that proceedings and records of hospital medical staffs concerned with evaluation and improvement of the quality of care in the hospital shall not be subject to discovery. California Evidence Code § 1157 (West 1997). The section further states that no person who attends a meeting of these committees shall be required to testify as to what transpired at that meeting. *Id.*

The existence of privileges in cases in federal court is governed by Rule 501 of the Federal Rules of Evidence, which provides:

[T]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof, shall be determined in accordance with State law.

Defendants assert that § 1157 applies in this action because of the Emergency Medical Treatment and Active Labor Act of 1986 ("EMTALA"), 42 U.S.C. § 1395dd, incorporates state damages law to the extent that plaintiffs are allowed to "obtain those damages available for personal injury under the law of the state in which the hospital is located." 42 U.S.C. § 1395dd(d)(2)(A). Defendants argue that state law therefore provides the rule of decision, and thus state privilege law governs. Plaintiffs counter that § 1157 is inapplicable in a federal question case such as the instant action, and that when federal and state claims are joined in the same action, claims of privilege are determined under federal law. *See William T. Thompson Co. v. General Nutrition Corp.,* 671 F.2d 100, 104 (3d Cir.1982).

This issue appears to be one of first impression. Plaintiffs are correct that ordinarily federal privilege law applies in federal question cases. However, EMTALA is unlike many federal laws in that it incorporates state law, thus requiring a different analysis of the issue than that put forth by plaintiffs.

Other courts have faced a question similar to that presented here when applying state privileges to federal actions under the Federal Tort Claims Act. The Federal Torts Claim Act requires federal courts to look to the law of the state where the act or omission occurred in order to determine government liability. 28 U.S.C. § 1346(b). Thus, the Federal Tort Claims Act, like EMTALA, incorporates state tort law to some extent. In *Menses v. United States Postal Service,* 942 F.Supp. 1320 (D.Nev.1996), the court held that the incorporation of state law did not

mean that "state law supplies the rule of decision" for purposes of FRE 501. *Accord Young v. United States,* 149 F.R.D. 199 (S.D.Cal.1993). In reviewing the legislative history of FRE 501, the *Menses* court stated, "Congress recognized that when federal courts merely adopt state law as federal law, there is no need to apply state law in matters such as the admissibility of evidence and claims of privilege, and that federal privilege law controls. It is only where state law is operative of its own force that state law supplies the rule of decision, and, under Rule 501, state privilege law governs." *Id.* at 1322. A state law is self-operative if state law provides the source of the right sued upon. In these cases, "no federal interest justifies overriding a state substantive law such as evidentiary privileges, and to do so would promote forum shopping and lead to an inequitable administration of the laws between state and federal courts." *Id.* In contrast, if the right sued upon has a federal source, then state law is incorporated or adopted as federal law, and federal interests in applying federal evidence rules and privileges outweigh any countervailing state interests.

The Court concludes that FRE 501 does not require the application of § 1157 to the instant action. In an EMTALA action, state substantive law is not operative of its own force. Rather, EMTALA establishes federal requirements for medical screening, stabilizing treatment, and restriction of transfers until the patient is stabilized. 42 U.S.C. § 1395dd(a)–(c). The statute creates a private right of action under *federal law* against offending hospitals, and incorporates state law only in the determination of damages.

Although federal courts are not required to apply state privileges law to federal question cases, federal courts may do so in the interest of comity. "[A]s a matter of comity, federal courts should attempt to ascertain what interests inspire relevant state doctrine and should take into account the views of state authorities about the importance of those interests." *Kelly v. City of San Jose,* 114 F.R.D. 653, 656 (N.D.Cal. 1987). In determining whether to apply a state privilege, a federal court should first

analyze whether application of the state law would be inconsistent with federal law. *See Pagano v. Oroville Hospital,* 145 F.R.D. 683, 688 (N.D.Cal.1993). If the state law is not inconsistent, the federal court should attempt to apply the state privilege in harmony with federal privileges law.

■ In *Pagano v. Oroville Hospital,* the court declined to apply § 1157 to a federal antitrust action, finding there is no clearly recognized federal peer review privilege and that § 1157 is too absolute in its application and effect, and therefore too inconsistent with federal law, to be applicable. *Id.* at 690. The court reasoned that disclosure in that case was necessary because the evidence sought was relevant to the plaintiff's allegations that the hospital had conspired to eliminate the plaintiff as a competitor in providing medical services.

The Court finds the *Pagano* court's reasoning instructive, and declines to apply § 1157 to the instant case. Section 1157 acts as an absolute shield against discovery, and this Court agrees with the *Pagano* court that such absolute protection against discovery is inconsistent with the flexibility of federal privilege law. Plaintiffs have alleged that defendants conspired to falsify Cody Burrows' medical records, and that the evidence they are seeking—to which defendants have raised claims of privilege under § 1157—is relevant to their spoliation of evidence claim. As a general matter, the Court finds that such evidence may be relevant to this claim, and holds that § 1157 is inapplicable in this action. Defendants may, of course, raise other claims of privilege to these documents if applicable.

**IT IS SO ORDERED.**

**ORDER:**

1. **DENYING PLAINTIFFS' MOTION TO STRIKE EX PARTE COMMUNICATIONS;**

2. **DENYING PLAINTIFFS' MOTION FOR SANCTIONS;**

3. **DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR RECONSIDERATION; and**

## 4. RESOLVING PENDING DISCOVERY DISPUTES

### INTRODUCTION

Cody Burrows, an eleven-month old infant, died after being transferred from Redbud Community Hospital to Santa Rosa Community Hospital. David Burrows and Rhoda Thomas, Cody's parents, filed this lawsuit in federal court alleging violations of the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), as well as pendent state law claims for medical malpractice, wrongful death, emotional distress, and spoliation of evidence.

Defendants have requested reconsideration of this Court's "Order Regarding Applicability of California Evidence Code § 1157" filed January 13, 1998, in which the Court held that the state peer review privilege did not apply in the instant case. At issue were plaintiffs' discovery requests for documents produced during hospital peer review sessions after Cody Burrows' death. In the January 13 order, the Court first concluded that under EMTALA, federal law supplies the rule of decision, and therefore according to Federal Rule of Evidence 501, federal privilege law applies. Federal law does not recognize a peer review privilege. However, in the interest of comity the Court contemplated whether the state privilege should apply. The Court, relying on *Pagano v. Oroville Hospital,* 145 F.R.D. 683 (E.D.Cal.1993), found that comity did not warrant the application of state privilege law.

Mindful of the then-pending criminal proceedings against defendant Schug, the Court waited to issue its order until Judge Warren rendered a decision regarding the applicability of Evidence Code § 1157 in the criminal context. On January 2, 1998, Judge Warren issued a ruling holding that § 1157 was inapplicable in the criminal proceedings against defendant Schug. This Court, no longer constrained by the impact its ruling on this issue might have on Dr. Schug's state criminal case, issued its order on January 13, 1998. Immediately after this Court issued its order, defendants notified the Court by letter that the California Court of Appeals had stayed Judge Warren's ruling as the result of

a Petition for Writ of Mandate and/or Prohibition or Other Appropriate Relief. Defendants also requested that this Court reconsider its opinion. On January 20, 1998, this Court granted defendants' request for reconsideration and set a briefing schedule on the matter. In the meantime, the Writ to the California Court of Appeals was denied on January 29, 1998. The defendants then petitioned the California Supreme Court for a stay and review. That petition was denied on February 4, 1998.

In addition to defendants' motion for reconsideration, the Court has before it plaintiffs' motion to strike defendants' allegedly *ex parte* communications with the Court, as well as plaintiffs' corresponding motion for sanctions. Plaintiffs argue that defendants' letters notifying the Court of the stay on Judge Warren's ruling and requesting reconsideration of this Court's order constituted impermissible *ex parte* communications.

## DISCUSSION

### A. Plaintiffs' Motions to Strike *Ex Parte* Communications and for Sanctions

■ Plaintiffs argue that defendants engaged in improper *ex parte* communications with the Court in violation of Civil Local Rule 11–3(c). Plaintiffs object that they were not provided prior notice of defendants' communications to the Court as required by the Local Rules, and that therefore these letters should be stricken. Plaintiffs argue that defendants' letters invoke the power of the Court and seek judicial relief, thereby affecting plaintiffs' substantive rights. In addition, plaintiffs specifically object to the letter sent by Robert Lynch, counsel for defendant Schug, on the ground that although the letter indicates that plaintiffs were copied, plaintiffs in fact never received a copy of the letter. Plaintiffs request sanctions against Mr. Lynch.

Defendants respond that they have not engaged in *ex parte* communications with the Court because plaintiffs were copied on all correspondence. Defendants state that they sent letters to the Court because they viewed the matter as a discovery dispute, and had been previously informed to notify the Court

of such disputes by letter brief. With regard to the letter sent by defendant Schug, Mr. Lynch states that the failure to copy plaintiffs was due to inadvertent clerical error, but that plaintiffs were not prejudiced since defendant Schug sought the same relief—reconsideration—as sought by the other defendants.

As the Court has already decided to reconsider its January 13, 1998 order. In the Court's view, these letters were not impermissible *ex parte* communications, as plaintiffs' counsel was copied on all letters save one. As to defendant Schug's letter to the Court which plaintiffs never received, the Court is persuaded that the error was inadvertent and that counsel for defendant Schug did not act in bad faith. Accordingly, the Court DENIES plaintiffs' motions to strike and for sanctions.

### B. Defendants' Motion for Reconsideration

Defendants advance numerous arguments in favor of their motions for reconsideration. To the extent that defendants reargue the same points, the Court will not reconsider these arguments. However, the Court will reconsider the new arguments raised by the parties.

Defendants first argue that plaintiffs' request for the peer review records only applies to the state law claim of spoliation, and thus state privilege law should apply to this claim. However, defendants' arguments fail for two reasons. First, plaintiffs contend that the records are relevant because the defendants, and other unknown persons who may be members of the Peer Review Committee, conspired to alter, destroy and falsify Cody's medical records with regard to the care and treatment he received during his stay at Redbud. This contention is common to all causes of action, including the federal cause of action under EMTALA. As such, federal privilege law governs.

■ Second, assuming arguendo that the evidence was relevant only to the spoliation claim, Federal Rules of Evidence dictate that privileges asserted in federal question cases shall be governed by federal law. State priv-

ilege law applies to purely state law claims brought in federal court pursuant to diversity jurisdiction. However, state law claims that are pendent to federal question cases are governed by federal privilege law. *See Wm. T. Thompson, Co. v. General Nutrition Corp., Inc.,* 671 F.2d 100, 104 (3d Cir.1982); *Pagano v. Oroville Hospital,* 145 F.R.D. 683 (E.D.Cal.1993); *Perrignon v. Bergen Brunswig Corp.,* 77 F.R.D. 455, 458–459 (N.D.Cal. 1978). In the instant case the Court's jurisdiction is grounded on 28 U.S.C. § 1331 based on plaintiffs' EMTALA claims. Thus, federal privilege law applies.

Defendants next argue that even if federal privilege law applies, FRE 501 provides that in the absence of a controlling statute, courts look to common law principles to determine the applicability of evidentiary principles. *See Teasdale v. Marin General Hospital,* 138 F.R.D. 691, 694 (N.D.Cal.1991). Federal courts in the Ninth Circuit have not yet adopted California's peer review privilege. Therefore, as provided by FRE 501, the question of whether § 1157 applies in federal court is "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." FRE 501. Reason and experience dictate that the courts, in the interest of comity, look to state privilege law to ascertain the interests at stake.

Courts have held that there is no federal common law or statutory privilege protecting peer review medical records when the plaintiff's claim arises out of the disciplinary proceedings themselves. *See Pagano v. Oroville Hospital,* 145 F.R.D. 683, 691 (E.D.Cal.1993) (holding that federal common law does not recognize medical peer review privilege in antitrust cases where the peer review itself is under attack). Courts have, however, recognized a peer review privilege in medical malpractice cases. *See Bredice v. Doctors Hospital,* 50 F.R.D. 249 (D.D.C.1970), *aff'd* 479 F.2d 920 (D.C.Cir.1973). Courts have drawn a distinction between medical malpractice and antitrust cases by reasoning that in medical malpractice cases the issue is whether the defendant was negligent in his care of the patient, not what transpired at a subsequent date during a peer review proceeding. *See*

*Bredice,* 50 F.R.D. 249. In addition, disclosure of information contained in the peer review meetings would have little impact on a plaintiff's ability to prove his case. *See id.* On the other hand, in antitrust cases the claims arise out of the disciplinary proceedings themselves, and thus discovery is permitted since there would be no other source of the information. *See Memorial Hospital for McHenry County v. Shadur,* 664 F.2d 1058, 1062 (7th Cir.1981).

Defendants argue that an EMTALA claim is essentially a medical malpractice claim, and thus the reasoning of the medical malpractice cases should apply. However, EMTALA claims are not grounded in tort concepts. *See Griffith v. Mt. Carmel Medical Center,* 842 F.Supp. 1359 (D.Kan.1994). A plaintiff's claim in an EMTALA action does not rest on any proof that defendant was negligent, but rather is predicated on the hospital's violation of the EMTALA statute making the hospital strictly liable. Therefore, the Court is not persuaded that an EMTALA claim is analogous to a medical malpractice claim and thus does not apply the reasoning of those cases. In addition, the Court is persuaded that to the extent plaintiffs allege that Dr. Schug may have been instructed to create the addendum and burn his notes at the peer review meeting, plaintiffs' claim for spoliation of evidence and EMTALA depend on communications made during the peer review proceedings. Thus, this case is more like the antitrust cases than medical malpractice cases, since part of the claims arise out of the peer review meetings. Therefore, barring any overriding policy concerns, the state privilege does not apply in federal court.

Defendants argue that overriding policy concerns dictate that the state privilege should apply. First, they argue that because state law requires medical practitioners to participate in the peer review sessions, it is unfair to then allow discovery of these meetings. Cal.Bus. & Prof.Code § 2282; Cal. Health & Saf.Code § 32128. Furthermore, defendants argue that § 1157 was instituted to encourage doctors to speak freely at such meetings in an effort to improve the quality of care. Therefore, defendants argue that

the California legislature, in enacting § 1157, made a statutory promise to physicians that their self-critical commentary in peer review sessions would not be publicly disclosed. However, the action has been brought in federal court, and federal law, rather than state law, applies. Furthermore, recognizing a privilege under § 1157 would be inconsistent with the federal policy against privileges and in favor of broad disclosure.

Defendants also raise several constitutional issues. First, defendant Schug argues that emergency room doctors are more likely to be implicated in EMTALA actions than other doctors because EMTALA prevents the transfer of medically unstable patients, a situation more frequently encountered in the emergency room. Therefore, defendant Schug argues that disclosing peer review records creates a constitutionally-suspect distinction between emergency room physicians and other doctors in California. Defendant reasons that if peer records are discoverable in EMTALA actions, emergency room doctors cannot rely on confidentiality, whereas non-emergency room doctors can rely on this protection.

The Court is not persuaded by such reasoning. The status of being an emergency room doctor is not a protected characteristic warranting strict scrutiny analysis; therefore, any classification resulting from this Court's order must meet the rational basis test. As long as there is some rational basis for the classification, the equal protection clause is not implicated. Here, the federal policies favoring disclosure and discovery in order to ascertain truth in the litigation context provide a rational basis for the classification, and therefore defendant's equal protection rights have not been violated.

Defendant Schug also argues that disclosure of the peer review records will deprive him of due process of the law. He contends that the right to pursue an occupation is a fundamental right, therefore, the government cannot impair his right to practice his profession without due process. *See Endler v. Schutzbank*, 68 Cal.2d 162, 169, 65 Cal.Rptr. 297, 436 P.2d 297 (1968). However, defendant Schug's reasoning is flawed because he is being accorded due process since he is receiving a full hearing in which he can present his defense. *See id.* at 172. Therefore, defendant fails to convince the Court that disclosure will violate his due process rights.

■ Finally, defendant Schug argues that disclosure will violate his right to privacy in the peer review records. California recognizes a constitutional right to privacy which is consistent with federal law and therefore can be considered in deciding whether or not to disclose the peer review records. *See Pagano*, 145 F.R.D. at 695. The Court considers the following factors in determining the scope of protection to be accorded in the privacy context:

(1) [T]he probable encroachment of the individual's privacy right if the contested action is allowed to proceed, and the magnitude of the encroachment; (2) whether the encroachment of the privacy right would impact an area that has traditionally been off limits from most regulation; (3) whether the desired information is available from other sources with less encroachment of the privacy right; (4) the extent to which the exercise of the individual's privacy rights impinge on the rights of others; and (5) whether the interests of society at large encourage a need for the proposed encroachment.

*Pagano*, 145 F.R.D. at 698–99.

In *Pagano*, the Court reasoned that fourth and fifth factors, which both bear on the policies favoring discovery, outweighed the first two factors which bear on the degree of encroachment. This is because discovery and admissibility of relevant truthful information affect the individual rights of litigants as well as the public interest. As one court has noted, "litigation has the tendency to make public the sort of information that individuals would otherwise prefer to keep private. Public disclosure, in the end, is not only natural and generally unavoidable but also necessary and healthy to a process so dependent on truth and accuracy." *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D.Cal.1990) (as cited in *Pagano*, 145 F.R.D. at 699). In addition, the names of patients and physicians were kept confidential in order to minimize the degree of encroachment upon the privacy rights of indi-

viduals. Finally, because the information sought was not available from other sources, the third factor also weighed in favor of disclosure.

In applying the five factors above, the Court finds the reasoning in *Pagano* persuasive. Here, the only relevant information is that directly related to the care of Cody. Furthermore, in Dr. Schug's criminal trial, the peer review records have already been discovered. Therefore, the balance of the five factors enumerated above, as well as the overall federal policy favoring broad disclosure, convince this Court that disclosure does not impermissibly violate Dr. Schug's right to privacy, especially since the information has already been revealed in the criminal context.

In conclusion, the Court finds that the hospital peer review records are discoverable, subject to a protective order. The parties are directed to submit a stipulated protective order providing for disclosure but ensuring the privacy of the physicians other than Dr. Schug. The Court, may at a later time and for good cause shown, entertain a motion for disclosing the identity of the physicians insofar as it is relevant to the plaintiffs' case. The information disclosed pursuant to this order shall be designated as "Confidential Material," and shall be used solely in connection with this litigation, or related appellate procedures, and not for any other purpose.

## C. Pending discovery disputes

During a case management conference on February 23, 1998, counsel for plaintiffs informed the Court that he believed there were numerous unresolved discovery disputes pending before the Court. Plaintiffs have since submitted a letter identifying these pending disputes, which plaintiffs contend are still pending from plaintiffs' Motion to Compel submitted October 22, 1997. It is this Court's understanding, as well as defendants', that this Court's November 3, 1997 order resolved all the discovery disputes as raised in plaintiffs' motion, except those dependent upon the Court's ruling on the applicability of § 1157. In the interest of clarity, the Court will reiterate what is already contained in the November 3, 1997 order: (1) defendants Redbud and Adventist have not waived their privileges because a privilege log had been produced; (2) plaintiffs are limited to 25 interrogatories per defendant; (3) defendant Adventist is ordered to produce documents # 2, 6, 8, and 9; (4) defendant Redbud is ordered to produce documents # 14 and 17. Furthermore, because the Court is now ruling that § 1157 is not applicable in federal court, to the extent that defendants objected to any discovery disputes on the basis of the applicability of § 1157, they are now ordered to respond.

Defendant Adventist correctly notes that if the Court rules that § 1157 is not applicable, Adventist will be required to answer plaintiffs' First Set of Interrogatories to defendant Adventist Health. However, Adventist is only required to answer numbers 1, 2a, 2b, 2c, 3e, 3f, 3g, 3h, 3i, 3j, 4, 5a, 5b, 5c, 5d, 5e, because this comports with the 25 interrogatory limit imposed in the Court's November 3, 1997 Order. In addition, Adventist concedes that it will have to produce Mr. Shultz for further deposition if § 1157 is not applicable. However, because Mr. Shultz has been previously deposed, this deposition should be limited to subject matter thought to be protected by § 1157 which is no longer protected.

Defendant Schug requests further opportunity to brief the issues regarding his deposition, interrogatories and document production because he contends that previous briefing focused primarily on his fifth amendment rights. The Court declines to grant this request because the parties have been given ample time to raise all objections. As such, any discovery which was withheld on the basis of § 1157 is now ordered to be produced, including interrogatories, depositions, and documents.

With respect to the deposition of Ms. De-Lashmutt, the Court construes plaintiffs' request as a motion to complete her deposition. The Court has read the portions of the deposition submitted by plaintiffs and will allow plaintiffs to complete the deposition because it agrees that defendants' counsel impermissibly coached Ms. DeLashmutt. All parties should be advised that objections should not

**614**

be used to attempt to coach a witness. *See Hall v. Clifton Precision,* 150 F.R.D. 525, 531 (E.D.Pa.1993). All objections to form of the question should be succinct and clearly state the objection. Further objections based on privilege should merely state the privilege asserted.

### CONCLUSION

For the foregoing reasons, plaintiffs' motions to strike *ex parte* communications and for sanctions is DENIED and defendants' motion for reconsideration is DENIED in that § 1157 does not apply in federal court, but is GRANTED with respect to a protective order of materials discovered.

**IT IS SO ORDERED.**