**Guadalupe LEON, et al., Plaintiffs,**

v.

**The COUNTY OF SAN DIEGO, et al., Defendants.**

**No. CIV.00–CV–1292–K (JFS).**

United States District Court, S.D. California.

Aug. 15, 2001.

Sonia M Mercado, Sonia Mercado and Associates, Los Angeles, CA, for plaintiffs.

Eliot J. Alazraki, County of San Diego Office of County Counsel, San Diego, CA, for defendants.

## REVISED ORDER [41–1] GRANTING PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS [25–1]

STIVEN, United States Magistrate Judge.

### I. INTRODUCTION

The motion of Plaintiffs Guadalupe Leon, et al., came on regularly for hearing on March 1, 2001 at 4:00 p.m. in the above entitled court. Plaintiffs filed the subject motion on January 16, 2001. Defendants submitted an opposition on February 9, 2001.

Plaintiffs filed a reply on February 21, 2001. Attorneys Sonia Mercado and Samuel Paz appeared telephonically for Plaintiffs. Attorney Eliot Alazraki appeared telephonically on behalf of Defendants.

## II. BACKGROUND

### A) Relevant Factual Background

On July 28, 1999, Juan Leon died while in the custody of the San Diego County Sheriff as a pre-trial detainee. He was eighteen years old at the time. Mr. Leon's jail medical records indicate that medical personnel at the County's George F. Bailey Detention Facility examined him on at least three different dates.[1] On July 15, 1999, Mr. Leon completed a sick call request indicating he was "throughing (sic) up after eating." (Defendants' opposition at 3). In response to this request, a nurse saw Mr. Leon the following day and sent him to the medical holding tank, where he apparently stayed for a short time. On July 17, 1999, Mr. Leon completed another sick call request, complaining of stomach pain and cramps. The next day, Mr. Leon was seen by nurses on at least four occasions. His temperature was recorded as above normal and he complained of abdominal tenderness. On July 19, Dr. Bruce Thompson examined Mr. Leon. He diagnosed gastroenteritis and prescribed Imodium and Tylenol. No further contact with medical personnel is recorded until the day of Mr. Leon's death. While awaiting a hearing in the Vista Courthouse, Mr. Leon fainted. A doctor at the Vista detention facility examined Mr. Leon, and he was then taken to the Tri–City Medical Center, where he was pronounced dead. The autopsy report identifies the cause of death as peritonitis due to idiopathic perforation of the descended colon.

### B) Procedural Background

On July 27, 2000, Plaintiffs filed this civil rights action against the County of San Diego, the San Diego Sheriff's Department and Sheriff William Kolender. Dr. Bruce Thompson was added as a named Defendant on February 5, 2001. The complaint identifies four causes of action against the Defendants. Three are federal law claims of violations of civil rights, with the fourth being a pendent state law claim of medical malpractice. Specifically, Plaintiffs claim a violation of 42 U.S.C. § 1983 through the deliberate indifference of Defendants to Juan Leon's condition; a failure on the part of Defendants to train and supervise resulting in constitutional violations; and the existence of a policy, practice or custom on the part of Defendants that created constitutional violations.

### C) The Present Discovery Dispute

This particular dispute involves the Plaintiffs' request for production of documents related to the medical care provided by the County. Specifically, Plaintiffs challenge Defendants' responses to five different requests:

# 6) Please produce all minutes of Directors meetings from 1995 to present.

# 7) Please produce all attendance sign in sheets for all peer review meetings for the time period January 1998.

# 8) Please produce the peer review binder(s) located in the nurses station which was referred to by LVN Joyce Santiago in her deposition.[2]

# 9) Please produce the minutes, notes or memoranda reflecting "weekly unit meetings" for the period of July 1, 1999 through December 31, 1999.

# 14) Please produce all agenda and writings of meetings regarding the quality assurance of medical care at San Diego County Jail from 1996 through the present.

Defendants gave identical responses to each request, first claiming the documents are not relevant and alternatively claiming that state or federal evidentiary privilege protects these documents from discovery.[3] Both in Defendants' opposition and in oral

---

1. Facts about Juan Leon's medical care are adopted both from Defendants' opposition and medical records attached as exhibit A to Defendants' opposition.

2. LVN Joyce Santiago is apparently a supervising nurse at the George F. Bailey Detention Facility, who revealed the existence of two "peer review" binders during her recent deposition.

3. Defendants responded to each question as follows:

    Objection, this request is vague, ambiguous and unintelligible. This request is also over

argument, Defendants' attorney clarified that the only responsive documents in the possession of the Defendants are two binders contained in the nurses' station at the George F. Bailey Detention Facility entitled "peer review" and "weekly unit meetings." Defendants state that no other responsive documents are presently known to exist.

## III. DISCUSSION

### A) Relevance

The threshold issue in any discovery dispute is determining whether the requested discovery meets the requirements of Federal Rule of Civil Procedure 26 regarding relevance. As amended on December 1, 2000, Rule 26 states in pertinent part, "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party .... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

Defendants state that the only responsive documents, the nursing peer review records, are not relevant because the nurses "did not review Juan [Leon's] chart or Dr. Thompson or any other medical staff's performance in that case." (Defendants' opposition at 8). Further, Defendants state that Dr. Thompson and other named Defendants did not participate in this peer review process, and no information created in these meetings was shared with them. By contrast, Plaintiffs assert that the requested documents are vital to uncovering facts necessary to prove the civil rights violations at the center of this case.

■ Proving municipal liability under 42 U.S.C. § 1983 is no easy task. A mere respondeat superior theory is not sufficient. Plaintiffs must show that the unconstitutional

deprivation of rights arises from a governmental custom, policy or practice. *Monell v. Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Further, inadequacy of training may be grounds for municipal liability under § 1983 only when such lack of training amounts to deliberate indifference to the rights of those with whom municipal employees come into contact. *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

■ In light of the elements Plaintiffs must satisfy to prove their claims, the documents in question (nursing peer review records) do appear reasonably calculated to lead to the discovery of admissible evidence. Although the records in question may not be specific to Juan Leon's care, nurses' review of the level of care they provide to other inmates may reveal a custom, policy or practice of the municipality as well as levels of training provided to the nurses. Defendants actually assist the argument of Plaintiffs through the declaration of Joyce Abadiano, a nurse at the George F. Bailey Detention Facility, who states that "the purpose of the peer review is to ensure that nurses demonstrate the skills necessary to perform assigned tasks, follow nursing protocols and detention polices and procedures." (Defendants' opposition at 7).

Accordingly, this Court finds that Plaintiffs' requests are, for discovery purposes, relevant to the claims or defenses of the parties. Discovery will therefore be permitted, so long as the documents are not privileged.

### B) Privilege

#### 1) State Evidentiary Privileges in Federal Court

■ Defendants first argue that this Court, as a matter of comity, should allow

---

broad. This request also seeks production of documents not relevant and not calculated to lead to the discovery of admissible evidence. This request also seeks documents privileged from discovery under California Evidence Code Sections 1156, 1156.1, 1157, 1157.6 and 1157.7 and Rule 501 of the Federal Rules of Evidence. See *Armstrong v. Dwyer,* 155 F.3d 211 (3rd Cir.1998) and *Morse v. Gerity,* 520 F.Supp. 470 (D.Conn.1981). This request also seeks discovery of privileged documents regarding patients not a party to this litigation.

This request also seeks privileged material pertaining to defendant's right to self-critical analysis. This request also seeks information protected from disclosure by the official information privilege. *Miller v. Pancucci,* 141 F.R.D. 292, 297–301 (C.D.Cal.1992). These documents are identified on defendant's privilege log and Bates stamped .... Without waiving objection, defendant further responds that it is not in possession of documents responsive to this request that relate to the medical care provided to Juan Leon.

the use of privileges available under California Evidence Code § 1157.[4] This section of the evidence code does provide strong protection to medical peer review records, and this Court agrees that the requested records would likely be privileged under § 1157, if that section were applicable to this case.

However, as this is a federal civil rights case, privilege issues are governed by Federal Rule of Evidence 501, which declares, "[T]he privilege of a witness, person, government, State or political subdivision shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

As Defendants rightly point out, Rule 501 provides a federal court with some flexibility in determining what privileges should be recognized in a given case. Rule 501 has been recognized as allowing the adoption of existing state evidentiary codes to govern federal cases where the state rules are not in conflict with federal rules. *Pagano v. Oroville Hosp.*, 145 F.R.D. 683 (E.D.Cal.1993), sets forth the authority behind this policy:

> "[A]s a matter of comity, federal courts should attempt to ascertain what interests inspire relevant state doctrine and should take into account the views of state authorities about the importance of those interests." *Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D.Cal.1987). "'A strong policy of comity between state and federal sovereignties impels federal courts

to recognize state privileges where this can be accomplished at no substantial costs to federal substantive and procedural policy.' *United States v. King*, 73 F.R.D. 103, 105 (E.D.N.Y.1976). And where a 'state holds out the expectation of protection to its citizens, they should not be disappointed by a mechanical and unnecessary application of the federal rule.' *Lora v. Board of Education*, 74 F.R.D. 565 (E.D.N.Y.1977)." *Id.* at 688 (quoting *Memorial Hospital For McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir.1981)).

■ This Court recognizes that California Evidence Code section 1157 does represent a important policy objective on the part of the state of California. "The obvious general purpose of section 1157 is to improve the quality of medical care in the hospitals by the use of peer review committees." *West Covina Hospital v. Superior Court*, 41 Cal.3d 846, 851, 226 Cal.Rptr. 132, 718 P.2d 119 (1986). Further, this Court understands that those who have engaged in these medical peer review meetings may have done so with the expectation that state laws would protect their statements from discovery. However, this Court finds strong authority for the proposition that allowing the use of the relevant California Evidence Code privilege in this case would do harm to federal substantive and procedural policy.

In the context of other federal question cases, courts have found that section 1157's

---

**4.** Cal. Evid.Code § 1157 provides in relevant part:

(a) Neither the proceedings nor the records of organized committees of medical, medical-dental, podiatric, registered dietitian, psychological, marriage and family therapist, licensed clinical social worker, or veterinary staffs in hospitals, or of a peer review body, as defined in Section 805 of the Business and Professions Code, having the responsibility of evaluation and improvement of the quality of care rendered in the hospital, or for that peer review body, or medical or dental review or dental hygienist review or chiropractic review or podiatric review or registered dietitian review or veterinary review or acupuncturist review committees of local medical, dental, dental hygienist, podiatric, dietetic, veterinary, acupuncture, or chiropractic societies, marriage and family therapist, licensed clinical social worker, or psychological review committees of state

or local marriage and family therapist, state or local licensed clinical social worker, or state or local psychological associations or societies having the responsibility of evaluation and improvement of the quality of care, shall be subject to discovery.

(b) Except as hereinafter provided, no person in attendance at a meeting of any of those committees shall be required to testify as to what transpired at that meeting.

(c) The prohibition relating to discovery or testimony does not apply to the statements made by any person in attendance at a meeting of any of those committees who is a party to an action or proceeding the subject matter of which was reviewed at that meeting, or to any person requesting hospital staff privileges, or in any action against an insurance carrier alleging bad faith by the carrier in refusing to accept a settlement offer within the policy limits.

(West 2001).

absolute bar on discovery is in conflict with the more liberal policy of discovery inherent in the Federal Rules. While the court in *Pagano* lauded the adoption of state evidentiary privileges, that court went on to reject the application of California Evidence Code section 1157 to the federal question in that case, the Sherman Act. The court found that a physician's claim that the committee apparatus of defendant hospital was used to exclude the physician and destroy his practice would be impossible to bring forth absent discovery of committee records. *Pagano*, 145 F.R.D. at 691. *See also Memorial Hospital v. Shadur*, 664 F.2d 1058, 1063 (7th Cir.1981) (Facing a nearly identical state privilege claim in a Sherman Act case, the court found that "deny[ing] [plaintiff] access to this information may very well prevent him from bringing his action altogether.").

The use of California Evidence Code section 1157 in a federal question case was again rejected in *Burrows v. Redbud Community Hosp.*, 187 F.R.D. 606 (N.D.Cal.1998). In *Burrows*, the plaintiff brought an action in federal court under the Emergency Medical Treatment and Active Labor Act, a federal law related to emergency room treatment. Plaintiff claimed that defendant doctors conspired to destroy medical records. *Id.* at 609. Relying in part on *Pagano*, the court found that section 1157 would act as an "absolute shield" against discovery, and was therefore inconsistent with the flexibility of federal privilege law. *Id.*

This Court does acknowledge that in the above cases, specific acts of harm to the plaintiffs were alleged to have occurred in the peer review meetings. Thus, the federal claims may have been more dependent on uncovering records of the meetings than might be the case here. However, this Court finds that because this is a civil rights action, special concerns about the protection of federal substantive law also weigh in favor of rejecting the state privilege claim.

The claims made here are federal constitutional claims against a non-federal govern-

ment agency. It thus appears particularly inappropriate to allow the use of state evidentiary privileges. "It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state or local authorities." *Miller v. Pancucci*, 141 F.R.D. 292, 297 (C.D.Cal.1992) (citing *Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D.Cal. 1987)). In *Kerr v. District Court*, 511 F.2d 192 (9th Cir.1975), prison officials could not invoke California evidentiary privilege to refuse to release personnel folders to a group of prisoners bringing a civil rights complaint. *Id.* at 197. "The state's interest [in a civil rights action] is that of a litigant, and not, as in diversity cases, that of a sovereign whose law is being applied in a foreign forum." *Id.* Summarizing these and other cases, the court in *Taylor v. Los Angeles Police Dept.*, 1999 WL 33101661 (C.D.Cal. Nov.10, 1999), rejected a police department's claim of various state privileges in a police brutality civil rights case, noting that only federal common law governs the adjudication of federal rights. Id. at *3. "[T]he so-called privileges raised by defendants under various provisions of the California Evidence and Penal Codes are not federal evidentiary privileges and do not warrant discussion." *Id.* at *3 n. 1.

There do not seem to be cases directly addressing the use of California Evidence Code section 1157 in a federal civil rights case. However, the rejection of section 1157 in other federal question cases and the rejection of other state privileges in civil rights cases indicate that it would be inappropriate to adopt section 1157 to protect the requested documents in this case. The absolute bar on discovery provided by section 1157 conflicts with the liberal discovery rules applicable in federal courts, and it conflicts with the necessity of finding state action inherent in the federal civil rights law.[5]

---

**5.** The Court notes that Defendants cite two case where a federal court found that the state medical "peer review" evidentiary privilege did apply to limit discovery, *Morse v. Gerity*, 520 F.Supp. 470 (D.Conn.1981), and *Armstrong v. Dwyer*, 155 F.3d 211 (3rd Cir.1998). However, both of these cases are pure medical malpractice actions. They do not raise federal questions, and are therefore governed by the underlying state laws, including rules of evidence. They are not relevant to the discussion here.

### 2) Privileges Under Federal Common Law

While this Court declines to apply California Evidence Code section 1157 to this case, the question remains as to whether or not the documents sought here are protected by some degree of privilege under the federal common law. Defendants assert that a "peer review" privilege exists under federal common law so long as the peer review meeting itself is not the cause of the claimed injury. Defendants further claim that the "self-critical analysis" privilege recognized in *Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423 (9th Cir.1992), also applies to protect the discovery.

■ First, this Court rejects the idea that a peer review privilege exists in federal common law. The Supreme Court soundly rejected such a contention in *University of Pennsylvania v. EEOC*, 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990), when the university attempted to claim a "common law" peer review privilege protected notes of tenure review meetings. "[W]e cannot accept the University's invitation to create a new privilege against the disclosure of peer review materials." *Id.* Nothing in the case seems to limit this holding to cases where the peer review meetings themselves are the alleged cause of the plaintiff's injuries, as Defendants contend here. In fact, the case reveals a great reluctance by the Court to apply evidentiary privileges. "Inasmuch as 'testimonial exclusionary rules and privileges contravene the fundamental principle' that 'the public ... has a right to every man's evidence,' ... any such privilege must 'be strictly construed.'" *Id.* at 189, 110 S.Ct. 577 (quoting *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (quoting *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950))). Thus no federal peer review privilege applies in this case.

With respect to the self-critical analysis privilege, the court in *Dowling* established a four part test for judging whether such a privilege applies: 1) the information must be self-critical analysis undertaken by the party seeking the protection, 2) the public must have a strong interest in maintaining the flow of the information, 3) the information must be of a type whose flow would be curtailed if discovery were allowed, and 4) the information must have been created with the expectation that it would be kept confidential, and it has in fact been kept confidential. 971 F.2d at 425–26.

The court then held that the self-critical analysis privilege does not protect routine internal corporate reviews of matters related to safety concerns. *Id.* at 427. "We hold that voluntary routine pre-accident safety reviews are not protected by a privilege of self-critical analysis, and that the district court therefore abused its discretion by applying a privilege of self-critical analysis to the safety-committee minutes that [plaintiff] sought to discover." *Id.* The court felt that such reviews would not be curtailed simply because they may be subjected to discovery. Many incentives exist for conducting such reviews, including the prevention of lawsuits alleging unsafe conditions.

However, the *Dowling* court did provide a limited privilege to documents prepared *after* an accident. "The candid analysis of the causes of accidents is more likely to be stifled by a disclosure requirement than would the routine review of safety concerns." *Id.* Forcing such disclosure might have a chilling effect on conducting necessary post-accident reviews. This is in furtherance of the goals of Federal Rule of Evidence 407, barring evidence of subsequent remedial measures in order to promote, or at least not discourage, efforts to prevent the re-occurrence of accidents.

■ This Court finds that the limited privilege identified in *Dowling* is not applicable in this case. The records at issue here are two peer review binders which, in the main, concern events occurring after the death of Juan Leon. However, Defendants make no claim that the requested documents are post-accident investigations of Juan Leon's death. In fact, they make the opposite argument, i.e. that the documents have nothing to do with the death of Juan Leon. Thus the policy interest inherent in Federal Rule of Evidence 407 does not appear applicable to these records.

Accordingly, this Court finds that no peer review or self-critical analysis privilege under federal common law protects the documents

in question. Therefore, discovery of the documents should be allowed.

## IV. CONCLUSION

By the instant motion, Plaintiffs ask the Court to compel the production of certain documents related to the provision of medical care by the County of San Diego. This Court finds that the document requests made by the Plaintiffs do meet the relevancy requirement of Rule 26. The Court further finds that neither a peer review privilege nor a self-critical analysis privilege applies to these documents in the present case.

Plaintiffs' motion is **HEREBY GRANTED** and Defendants are **HEREBY ORDERED** to produce the documents identified in Plaintiffs' Request for Production of Documents nos. 6, 7, 8, 9, and 14, to the extent that they exist. However, being mindful of the public policy underlying California Evidence Code section 1157, the Court will allow Defendants the option of redacting the names of individual nurses or patients that may be contained in these records.[6] It is **HEREBY FURTHER ORDERED** that the documents produced by Defendants shall be used *only* during the pendency of this case, and *only* for matters related to this case.

**IT IS SO ORDERED.**

---

**6.** If Defendants exercise this option, Plaintiffs may request that Defendants provide the title of each person appearing in the records, and the frequency of each person's appearance, if Plaintiffs determine this information is necessary after reviewing the records.