Jo Ann YOUNG and James
Young, Plaintiffs,

v.

The UNITED STATES of
America, Defendant.

Civ. No. 90–1334–R(BTM).

United States District Court,
S.D. California.

May 18, 1993.

Nancy Sussman, Hayworth and Sussman, San Diego, CA, for plaintiffs.

James W. Brannigan, Jr., U.S. Atty., Kathryn Snyder, Asst. U.S. Atty., San Diego, CA, for defendant.

James E. Kramer, McCormick & Mitchell, San Diego, CA.

## MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO COMPEL PRODUCTION OF PLAINTIFF'S TAX RETURNS

MOSKOWITZ, United States Magistrate Judge:

Jo Ann Young brought this action under the Federal Tort Claims Act for injuries to her allegedly caused by a defective roll-up steel door at the North Island Naval Air Station in Coronado, California. Past and future lost wages are a substantial part of plaintiff's claim for damages. The United States requested production of plaintiffs' tax returns for a period before and after the date of the injury. Plaintiff produced her tax returns for the two years prior to the injury, but declined to produce the returns for the subsequent years contending that they were privileged. California law recognizes a tax return privilege while federal law does not. This case calls upon the court to decide whether Rule 501 of the Federal Rules of Evidence requires application of the federal or state law of privilege to cases brought under the Federal Tort Claims Act.

### FACTS

Plaintiff, Jo Ann Young, claims she was injured on August 8, 1988, while employed by Cerberonics, a Navy contractor performing work in and around Building # C-72 on Naval Air Station North Island. Plaintiff and her supervisor attempted to close the roll-up steel door to Building # C-72. The door was stuck and would not roll down. Ms. Young climbed up onto a ladder to attempt to get the door unstuck while her supervisor continued to pull on the chain to the unwinding mechanism. Ms. Young had finally given up and started to descend the ladder when the door unwound and struck her, knocking her off of the ladder and onto the concrete floor. Plaintiff and her husband brought this action against the United States for damages pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671–80.

On March 23, 1992, the United States sought production under Fed.R.Civ.P. 34 of plaintiff's tax returns for the period of 1983 to 1991. Plaintiffs objected on the grounds of a privacy privilege. Counsel for the government initially convinced counsel for the plaintiffs that the privilege didn't apply. Thus, the plaintiffs' joint returns for 1987 and 1988 were produced on October 19,

1992.[1] Plaintiffs claimed they could not locate the returns for subsequent years. The plaintiffs did agree, at one point, however, to provide an authorization for the IRS to provide copies of the returns. On April 29, 1992, Ms. Young's husband voluntarily dismissed his claim leaving Ms. Young as the sole plaintiff. The authorization for the production of copies of the tax returns did not materialize.

Difficulties surfaced between counsel for Ms. Young and the government. Counsel for Ms. Young asserted that the attorney for the government misled her as to the applicability of the tax return privilege and refused to provide authorization or produce the returns for the tax years following Ms. Young's injury. She claimed that California's tax return privilege applied to protect the returns from discovery. Counsel for plaintiff added, that in any event, only plaintiff's husband had any income for those years so the returns would not aid the government's defense in any way. The government moved to compel production of the tax returns.

## I. Privilege

■ California recognizes a privilege protecting tax returns from disclosure. *Webb v. Standard Oil Co.*, 49 Cal.2d 509, 513, 319 P.2d 621, 624 (1957). The tax return privilege, however, is not absolute. *Schnabel v. Superior Ct.*, 9 Cal.App.4th 1588, 1595, 12 Cal.Rptr.2d 63, 68 (Ct.App.), *review granted*, 13 Cal.Rptr.2d 850, 840 P.2d 955 (1992). In *Schnabel*, the court noted that, "The need for an efficient tax collection system must be balanced against other public policy considerations." *Id.* The present exceptions to the California tax return privilege are not applicable to the facts of this case. Under federal law, tax returns are generally discoverable where necessary in private civil litigation. *St. Regis Paper Co. v. United States*, 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961).

■ The existence of privileges in cases in federal court is governed by Rule 501 of the Federal Rules of Evidence which provides:

[T]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Young argues that, under the Federal Tort Claims Act, state law provides the rule of decision, and therefore, state privilege law should apply. The government argues that federal privilege law applies in this case because it is one involving federal question jurisdiction.

The Federal Tort Claims Act provides,

[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (1992). Plaintiff contends that since 28 U.S.C. § 1346(b) provides that state law is used to determine liability in a Federal Tort Claims Act case, Rule 501 requires the application of state privilege law.

■ It is true that under 28 U.S.C. § 1346(b), the court must look to the law of the state where the injury occurred. However, that does not mean that for the purposes of Rule 501 that "state law supplies the rule of decision". The law governing suits in federal courts may be state law operative of its own force, state law incorporated or adopted as the federal law, or specific federal law uniform throughout the United States. *See discussion in Southern Pac. Transp. Co.*

---

1. On May 14, 1992, plaintiffs sent the government's counsel unsigned copies of part of the tax returns sought. Counsel for the government pressed for complete signed copies.

*v. United States,* 462 F.Supp. 1193 (E.D.Ca. 1978). Where state law operates of its own force, it is clear that state law supplies the rule of decision. However, where the state law becomes, in effect, the federal law by incorporation, then federal law supplies the rule of decision.

In *Feres v. United States,* 340 U.S. 135, 142, 71 S.Ct. 153, 157, 95 L.Ed. 152 (1950), the Supreme Court noted that 28 U.S.C. § 1346(b), "Assimilates into federal law the rules of substantive law of the several states, among which divergencies are notorious". Similarly in *Moor v. County of Alameda,* 411 U.S. 693, 701, 93 S.Ct. 1785, 1791, 36 L.Ed.2d 596 (1973), the Supreme Court stated that, "It is, of course, not uncommon for Congress to direct that state law be used to fill the interstices of federal law.[11]" In Footnote 11 in *Moor,* the Supreme Court stated that, "A ready example of such federal adoption of state law is to be found in the Federal Tort Claims Act under which the United States is made liable for certain torts of its employees in accordance with relevant state law. See 28 U.S.C. §§ 1346(b); 2671–2680". 411 U.S. at 701, 93 S.Ct. at 1791. The Ninth Circuit in *General Amer. Life Ins. Co. v. Castonguay,* 984 F.2d 1518, 1522 (9th Cir.1993) observed that where relationships traditionally governed by common law are brought within federal law, state law is often used as the federal law rather than inventing a federal common law. Thus, the Ninth Circuit noted that the Federal Tort Claims Act is an example of a statute "incorporating state law for torts committed by the federal government rather than creating a federal law of torts". *General Amer. Life,* 984 F.2d at 1522. While the law of California is looked to in this case to determine the liability of the United States to the plaintiff, it is effectively federal law by incorporation. Therefore, under Rule 501, it is federal law, and not state law, that supplies the rule of decision.

Plaintiff contends that a plain reading of Rule 501 nevertheless compels a conclusion that state law supplies the rule of decision in Federal Tort Claims Act cases, not withstanding the theoretical analysis that state law applies only because it has been incorporated into and as the federal law. However, the legislative history of Rule 501 supports the conclusion that Congress intended federal privilege law to apply in Federal Tort Claims Act cases.

The House Committee on the Judiciary drafted proposed Rule 501 in essentially the same form as it was enacted. The bill provided in relevant part that, "In civil actions, with respect to a claim or defense as to which State law supplies the rule of decision the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law." In so doing, the House intended to "require the application of state privilege law in civil actions and proceedings governed by *Erie R. Co. v. Tompkins,* 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188] (1938)". The House explained,

> The rationale underlying the proviso is that federal law should not supersede that of the States in substantive areas such as privilege absent a compelling reason. The Committee believes that in civil cases in the federal courts where an element of a claim or defense is not grounded upon a federal question, there is no federal interest strong enough to justify departure from State policy. In addition, the Committee considered that the Court's proposed Article V would have promoted forum shopping in some civil actions, depending upon differences in the privilege law applied as among the State and federal courts. The Committee's proviso, on the other hand, under which the federal courts are bound to apply the State's privilege law in actions founded upon a State-created right or defense, removes the incentive to "shop".

H.R.Rep. No. 650, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 7075, 7082–83. The House Committee circulated its version of Rule 501 for nationwide comment. In response to the House proposal, the Department of Justice raised the very issue as to the applicability of state privilege law in Federal Tort Claims Act cases. The Justice Department commented:

> The policy decision to adhere to *Erie* in cases involving privileged communications, if limited to diversity cases, is of no real

concern to us. As worded, however, the Subcommittee's rule does not appear to limit this dependence on state law solely to diversity actions. This poses a real problem. There are thus statutes which make state law determinative in cases in which the United States may be a party (*e.g., Federal Tort Claims Act*). There is generally no reason in those instances to apply state law in matters regarding the admissibility of evidence and claims of privilege. Before a blanket rule applicable to all such cases is adopted, Congress should examine each of the instances in which state law is applicable to actions involving the United States and determine whether the policy considerations favoring uniformity of procedure in actions involving the United States should prevail. The last sentence of the rule should be amended to reflect these views.

*Department of Justice Analysis and Recommendations Regarding Draft of Proposed Rules of Evidence of the Subcommittee on Criminal Justice, House Committee on the Judiciary,* H.R. 5463, 93d Cong., 1st Sess. 347 (1973) (statement of William D. Ruckelshaus, Acting Deputy Attorney General) (emphasis added).

Due to its concerns that the House bill would be difficult to apply, the Senate proposed what it thought was a clearer and more practical standard based upon the source of federal jurisdiction. The Senate bill provided, "In civil actions and proceedings arising under 28 U.S.C. § 1332 or 28 U.S.C. § 1335, or between citizens of different States and removed under 28 U.S.C. § 1441(b) the privilege of a witness, person, government, State or political subdivision thereof is determined in accordance with State law, unless with respect to the particular claim or defense, Federal law supplies the rule of decision." Conf.Rep. No. 1597, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 7098, 7100. The Senate stated,

The committee understands [the] thrust of the House amendment to require that State privilege law be applied in "diversity" cases (actions on questions of State law between citizens of different States arising under 28 U.S.C. § 1332). The language of

the House amendment, however, goes beyond this in some respects, and falls short of it in others: State privilege law applies even in nondiversity, Federal question civil cases, where an issue governed by State substantive law is the object of the evidence (such issues do sometimes arise in such cases)....

... [D]isputes will arise as to how the rule should be applied in an antitrust action or in a tax case where the Federal statute is silent as to a particular aspect of the substantive law in question, but Federal cases had incorporated State law by reference to State law. Is a claim (or defense) based on such a reference a claim or defense as to which federal or State law supplies the rule of decision?

S.Rep. No. 1277, 93d Cong., 2d Sess. (1974), *reprinted in,* 1974 U.S.C.C.A.N. 7051, 7058–59 (footnote omitted).

The Senate–House Conference discussed the differences between the House and Senate bills and, ultimately, adopted the House version as to Rule 501. In adopting the House version, however, the Conference responded to the concerns of the Department of Justice by explaining,

In nondiversity jurisdiction civil cases, federal privilege law will generally apply. In those situations where a federal court adopts or incorporates state law to fill interstices or gaps in federal statutory phrases, the court generally will apply federal privilege law.... When a federal court chooses to absorb state law, it is applying the state law as a matter of federal common law. Thus, state law does not supply the rule of decision (even though the federal court may apply a rule derived from state decisions), and state privilege law would not apply.

Conf.Rep. No. 1597, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 7098, 7101. Thus, in areas of federal law where the federal courts adopt or incorporate state law as the federal rule of decision, the legislative history indicates that Congress intended for Rule 501 to require the application of federal privilege law.

In adopting Rule 501, Congress was aware of the very issue raised in this case. It

clearly stated its intent that Rule 501 require application of federal privilege rules when the federal court is absorbing state law as the federal law. Congress expressed this intent against a background of statements by the Supreme Court in *Feres* and *Moor* that the Federal Tort Claims Act incorporates state law into the federal law. " '[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country they are presumed to have been used in that sense unless the context compels to the contrary.' " *Lorillard v. Pons,* 434 U.S. 575, 583, 98 S.Ct. 866, 871, 55 L.Ed.2d 40 (1978) (quoting *Standard Oil v. United States,* 221 U.S. 1, 59, 31 S.Ct. 502, 515, 55 L.Ed. 619 (1911)).

Finally, the Federal Tort Claims Act implicates substantial federal interests, certainly strong enough to justify departure from state policy. The purpose of the Federal Tort Claims Act was to remove the sovereign immunity of the United States from tort actions in order to reduce the number of wrongs which previously were not remediable only because the person causing the injury was an officer or employee of the federal government. *Feres,* 340 U.S. at 139–40, 71 S.Ct. at 156. In relinquishing its sovereign immunity, however, the government consented to the *exclusive* jurisdiction of the federal courts, 28 U.S.C. § 1346(b) (1992), thus intending that claims against it would be decided only according to federal procedural law. Thus, there is no need to apply state privilege law to avoid forum shopping. In addition, the interest in application of a uniform procedural law is greater in Federal Tort Claims Act cases than in diversity cases, because the United States expects to be subjected to suit in all fifty states, whereas individual or corporate defendants do not normally expect to be involved in such widespread litigation.

While one may debate the meaning of the last sentence of Rule 501, its legislative history clearly indicates that state privilege law was not intended to apply in Federal Tort Claims Act cases. Important policy concerns with procedural uniformity in the administration of Federal Tort Claims Act litigation necessitate the application of one rule of privilege in such cases regardless of which state the district court in which the case is pending is located. It seems inappropriate to the court that the United States would be limited as to the evidence it could discover and present in some of its 94 districts and not in others. The court, therefore, holds that federal privilege law applies to discovery and the admission of evidence in Federal Tort Claims Act cases.[2]

■ The plaintiff argues that, even if federal privilege law applies, the government must show .a compelling need for the tax returns rather than simple relevancy in order for production to be ordered. "[A]lthough tax returns ... are made confidential within the government bureau, Internal Revenue Code of 1954, §§ 6103, 7213(a), copies in the hands of the taxpayer are held subject to discovery." [3] *St. Regis Paper Co. v. United States,* 368 U.S. 208, 218–19, 82 S.Ct. 289, 295–96, 7 L.Ed.2d 240 (1961). The Ninth Circuit has nevertheless stated that "a public policy against unnecessary public disclosure [of tax returns] arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns." *Premium Serv. Corp. v. Sperry & Hutchinson Co.,* 511 F.2d 225, 229 (9th Cir. 1975).

In *Premium Serv.* the Ninth Circuit upheld an order to quash a subpoena for tax returns from a third party based upon the policy against unnecessary disclosure. In contrast, the plaintiff's tax returns in this case are reasonably calculated to lead to the

---

**2.** The government argued in this case that federal privilege law applies in all federal question cases. Thus, the government would use the distinction between diversity and federal question jurisdiction to determine the applicability of state or federal privilege law. As noted above, this distinction was proposed by the Senate but rejected. Rule 501 as enacted requires an analysis of whether state law applies by its own force or is in reality incorporated into federal law and

becomes a federal rule of decision. *See, Southern Pac. Transp. Co., supra.*

**3.** Section 6103 restricts the dissemination of tax returns by the government but does not otherwise make them privileged. *Heathman v. United States Dist. Ct. C.D. Cal.,* 503 F.2d 1032, 1035 (9th Cir.1974).

discovery of evidence relevant to the government's defense. The government must be entitled to obtain discovery regarding Ms. Young's income as reported to the Internal Revenue Service in order to evaluate and defend against her claim for lost wages. She claims that she has been unemployed since the injury occurred. Her tax returns are important evidence that may verify or contradict this assertion. This court, therefore, finds that the disclosure is reasonably necessary and an appropriate subject of discovery. In addition, the tax returns sought to be discovered are those of a party, rather than a nonparty as in *Premium Serv.* The court holds that the plaintiff's tax returns from the time of the accident to the present are not privileged and are discoverable.

## II. Waiver

■ The government argues that, even if the tax returns are privileged, the privilege has been waived by the plaintiff's actions. First, the government argues that the privilege has been waived by the plaintiff making a claim for lost wages, thus placing her income in issue. The California Court of Appeal has held that the gravamen of a complaint may be so inconsistent with assertion of the tax return privilege as to constitute a waiver of the privilege. *Wilson v. Superior Ct.,* 63 Cal.App.3d 825, 134 Cal.Rptr. 130 (1976). The plaintiff must choose whether he or she will assert the tax return privilege or pursue the lawsuit. The California Court of Appeal has also held that the privilege against self-incrimination, as related to the filing of income tax returns, was waived by pursuing a claim for loss of income in a personal injury lawsuit. *Newson v. City of Oakland,* 37 Cal.App.3d 1050, 112 Cal.Rptr. 890 (1974). However, "In the absence of a waiver by *each* of the holders of the privilege, the court may not compel disclosure of joint federal or joint state income tax returns, or any information contained therein." *Coate v. Superior Ct.,* 81 Cal.App.3d 113, 115, 144 Cal.Rptr. 350, 351 (1978) (emphasis in original). The claim for lost wages is Ms. Young's claim alone. Although plaintiff's husband was previously a party to this action, he never made a claim for lost wages. Therefore, plaintiff's husband never placed his income in issue. Plaintiff's waiver of the

tax return privilege may not be used to deprive her husband of his right to assert the privilege. *Id.* at 116, 144 Cal.Rptr. at 351.

■ The government also argues that any tax return privilege was waived by the partial production of documents. The plaintiff's attorney produced tax returns for the two years prior to the accident, while withholding the tax returns for the years following the accident. Voluntary disclosure of a privileged communication constitutes a waiver of the privilege as to all other such communications on the same subject. *See Weil v. Investment/Indicators, Research & Management, Inc.,* 647 F.2d 18, 24 (9th Cir.1981); *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926, 929 (N.D.Cal.1976); *Chinnici v. Central Dupage Hosp. Ass'n,* 136 F.R.D. 464, 465 (N.D.Ill.1991). ("Production of some privileged documents waives the privilege as to all documents of the same subject matter.") It would be unfair for a party to be allowed to assert the privilege as to damaging communications while disclosing other selected favorable communications. *Handgards,* 413 F.Supp. at 929.

■ The question of whether both spouses waived the privilege by production of the two tax returns must again be addressed. Although Mr. Young voluntarily dismissed his claims against the government prior to the production of the returns, the plaintiff's attorney has continued to represent him. She continued to represent him even at the hearing on this motion by arguing for protection of his tax return privilege. Therefore, the production of some of the tax returns by the attorney for plaintiff and plaintiff's husband waived the privilege as to both Mr. and Mrs. Young.

Plaintiff argued that counsel for the government deceived her into producing the tax returns by claiming no tax return privilege existed in this case. This argument is deserving of little attention for two simple reasons. First, counsel for plaintiff is an experienced attorney and is responsible for making her own determination as to the law. Second, while this issue is one upon which there is not a wealth of case law, counsel for the government was correct.

 Last, the government argues for a waiver of any privilege based upon the untimeliness of the plaintiff's response. The court notes that the government served its document production request by placing it in the mail on March 23, 1992. The plaintiff's response was due on April 25, 1992, and she served it by placing it in the mail on April 28, 1992, three days late. Generally, a party's failure to serve timely objections to document production requests constitutes a waiver of any objections which the party might have to the requests. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir.1992); *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D.Mass.1988); *See also, Marx v. Kelly, Hart & Hallman*, 929 F.2d 8, 12 (1st Cir.1991); *Perry v. Golub*, 74 F.R.D. 360, 363 (N.D.Ala.1976) and cases cited therein; 4A James W. Moore, *Moore's Federal Practice*, ¶ 34.05[2] (1992). " 'Any other result would ... completely frustrate the time limits contained in the Federal Rules and give a license to litigants to ignore the time limits for discovery without any adverse consequences.' " *Krewson*, 120 F.R.D. at 7 (quoting *Slauenwhite v. Bekum Maschinenfabriken, GMBH*, 35 Fed. R.Serv.2d 975 (D.Mass.1983)); *See also, United States for Use of Weston & Brooker Co. v. Continental Casualty Co.*, 303 F.2d 91, 92 (4th Cir.1962). However, in this case due to the plaintiff's relatively short tardiness, the court would not find a waiver of a privilege if the request exceeded the bounds of fair discovery by seeking a document clearly privileged under the law. *See, Krewson*, supra at 7. Since the court has ruled that the tax return privilege is inapplicable, there is no need to decide whether the delay has constituted a waiver.

### III. Conclusion

 The plaintiff's objections to production of her tax returns are overruled. The defendant's motion to compel is granted. Plaintiff shall produce to the court *in camera* all of her federal and state tax returns for the years subsequent to 1988 on or before June 1, 1993. The court will examine the returns and if there is any evidence of income earned by plaintiff or if the returns are ambiguous on that issue, they will be pro-

duced to defendant. However, if the returns clearly show that only plaintiff's husband earned income, the returns are not probative for the defense. In such instance, the public policy against unnecessary public disclosure of tax returns requires that the returns be sealed by the court and not produced to the defendant. *Premium Service Corp. v. Sperry & Hutchinson Co., supra.*

IT IS SO ORDERED.