**Maribel GALARZA, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civil No. 97–1732H(AJB).**

United States District Court,
S.D. California.

May 12, 1998.

Michael Feldman, San Diego, CA, for Plaintiff.

Steven Poliakoff, Assistant United States Attorney, San Diego, CA, for Defendant.

### Order Denying Request for Protective Order

BATTAGLIA, United States Magistrate Judge.

Plaintiff Galarza moves the Court for a Protective Order to prevent Defendant United States from engaging in ex parte communications with Plaintiff's physicians. Plaintiff has filed a motion and reply, and Defendant has filed an opposition. A hearing was held before Magistrate Judge Battaglia on April 24, 1998. Michael Feldman, Esq. appeared on behalf of Plaintiff. Steven Poliakoff, Esq. and Nita Stormes, Esq. appeared on behalf of Defendant. Based upon the papers submitted by both parties, and upon the argument presented at the hearing, for the reasons set forth below, Plaintiff's motion is DENIED.

### BACKGROUND

The complaint in this case arises under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b). In November 1994, Plaintiff Galarza was experiencing pain in her pelvic area. Galarza's husband is enlisted in the Navy, so she sought treatment for her condition at Balboa Naval Hospital. Galarza underwent surgery that resulted in the removal of her uterus. Naval hospital physicians Dr. C.J. Wolf, LT MC USNR and Dr. Charon

Gentile, LCDR MC USNR performed the surgery. Galarza claims that she was under the impression that a hysterectomy would only be performed if the physicians' results from an exploratory laparoscopy determined that a total abdominal hysterectomy was necessary. Galarza claims that the physicians never performed the exploratory examination and simply removed her uterus without determining if that procedure was necessary to alleviate her pain. Galarza brings suit under the FTCA claiming negligent diagnosis and treatment by the physicians at the Naval Hospital which caused her emotional distress and mental anguish, pain, bodily disfigurement, medical and hospitalization expenses, permanent disability, and loss of earnings.

■ Under the FTCA the United States waives its sovereign immunity and allows suit to be brought against it; thus the United States, and not the physicians who performed Galarza's surgery, is the named Defendant. The United States Attorney's Office (USAO) in representing the United States has conducted, and/or intends to conduct, ex parte communications with Drs. Wolf and Gentile and other government physicians who treated Galarza both prior to and following her surgery. Galarza seeks a Protective Order to prohibit these informal ex parte discovery procedures with all her government-employed physicians. In the alternative, if the United States is allowed to hold the ex parte interviews, Galarza seeks an order declaring the communications fully discoverable and not covered by the attorney-client privilege or work product doctrine.

### DISCUSSION

#### A. Determination of Applicable Law Governing Privilege in FTCA Cases

■ Plaintiff Galarza contends that in an FTCA case the applicable law governing privilege is state law and not federal common law. Federal Rule of Evidence 501 governs the existence of privilege in cases in federal court. Rule 501 states: "[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." Fed.R.Evid. 501.

In this district, the determination of whether federal or state law of privilege controls in FTCA cases was thoroughly examined under case law and through legislative history in *Young v. United States,* 149 F.R.D. 199 (S.D.Cal.1993). In holding that FTCA cases require the application of federal law, the court concluded:

"[T]he Federal Tort Claims Act implicates substantial federal interests, certainly strong enough to justify departure from state policy. The purpose of the Federal Tort Claims Act was to remove the sovereign immunity of the United States from tort actions in order to reduce the number of wrongs which previously were not remediable only because the person causing the injury was an officer or employee of the federal government. [Citation.] In relinquishing its sovereign immunity, however, the government consented to the exclusive jurisdiction of the federal courts, [citation], thus intending that claims against it would be decided only according to federal procedural law. Thus, there is no need to apply state privilege law to avoid forum shopping. In addition, the interest in application of a uniform procedural law is greater in Federal Tort Claims Act cases than in diversity cases, because the United States expects to be subjected to suit in all fifty states, whereas individual or corporate defendants do not normally expect to be involved in such wide spread litigation."

*Young,* 149 F.R.D. at 204.

Because Galarza has brought suit under the FTCA, federal law will govern the application of privilege. Galarza's reliance on State law is misplaced.[1]

1. This Court's prior decision in *Platypus Wear, Inc. v. K.D. Company, Inc.,* 905 F.Supp. 808 (S.D.Cal.1995), is distinguishable. *Platypus* was a diversity case involving various state law claims with only one federal claim asserted as part of a counterclaim. The federal interests in that case were minor, at best.

## B. Physician–Patient Privilege

Under federal common law there is no physician-patient privilege. *Sipes v. United States*, 111 F.R.D. 59, 61 (S.D.Cal. 1986); *see also Perkins v. United States*, 877 F.Supp. 330, 332 (E.D.Tex.1995). Based thereon, Plaintiff's motion for a protective order on the basis of the Physician–Patient privilege is *denied*. However, Galarza contends that ex parte communication by the United States with her physicians could result not only in violations of her (state) statutory privilege, but in manipulation of the treating physicians' conclusions, thereby tainting the legal process. This necessitates an analysis of the interests of both parties and, in particular, the government's right to prepare its case by talking with its own employees, as well as the privileged nature of those communications.

## C. Ex Parte Communications

Galarza concedes that communications between her and her physicians are discoverable; however, she speculates that the USAO and her physicians harbor some sinister motives that require discovery to be limited to formal methods. Galarza is concerned that since the treating physicians are employees of the United States and not named defendants against whom she would have recourse in case of a breach of physician-patient confidentiality, these physicians will disclose communications not relevant to this case, or alter their communications to best serve their interests or that of their employer, the United States[2]. Galarza is also concerned that the USAO will engage in an intimidation process with the treating physicians, in order to obtain favorable statements. Because Galarza seeks a protective order to prohibit the ex parte communications, it is her burden under Rule 26(c) of the Federal Rules of Civil Procedure to show good cause for the issuance of such order.

Particular to this case, Galarza is asking the court to intervene in discussions with the United States and its employees and agents who are necessary to the preparation and defense of the United States. However, no persuasive authority for this extraordinary relief exists. Interference with a defendant's ability to defend itself cannot be sanctioned in the interests of justice. The government's liability in this case rests upon the actions of many of the very doctors which are the focus of this motion. To preclude the government from talking to its agents who are the actors upon which liability rests would severely and unfairly limit the government's ability to defend itself. Discovery methods, including informal interviews, in a general sense are not prohibited under the Federal Rules of Civil Procedure which would apply to discovery in this case. *Felder v. Wyman*, 139 F.R.D. 85 (D.S.C. 1991). It is well recognized, that absent a privilege, no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting upon some notion of allegiance. *Doe v. Eli Lilly and Company, Inc.*, 99 F.R.D. 126 (D.D.C. 1983).

Galarza's physician-patient privilege does not exist under federal common law, and there is no case law or policy reasons that absolutely prohibit the ex parte interviews with her physicians. Therefore, the court has no basis for ordering the United States to not engage in ex parte communications with Galarza's government employed physicians regarding the medical issues Galarza has placed in controversy.[3]

## D. Privileged Communications

Galarza contends that since the government-employed physicians are not subject to personal liability to Galarza, these physicians will alter their recollection of events in order not to jeopardize their employment or careers. Galarza requests this court to order that all information the United States obtains

---

2. The Court is not convinced that Plaintiff is without any remedy regarding disclosure of non-related or irrelevant matters or information.

3. The Court does not need to reach the United States' contention that Galarza has waived her

physician-patient privilege. However, because Galarza placed her physical condition at issue, she would have waived any communications relative to the issues in the litigation. *Sipes*, 111 F.R.D. at 61.

in these informal discovery procedures be discoverable to her and not covered under the attorney-client privilege or work product doctrine if the United States is allowed to conduct ex parte interviews with Galarza's physicians. Galarza contends that this is the only way to safeguard the integrity of the judicial proceedings.

■ Under common law, the attorney-client privilege is the oldest recognized privilege for confidential communications. *Upjohn Company v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The long recognized purpose of this privilege is to encourage full disclosure of information by the client. When the attorney and client are able to communicate freely, without the apprehension of the consequences of disclosure, the attorney can give his client sound and informed legal advice. The attorney can sift through all the information and decide what is and is not relevant to the case and formulate an appropriate legal strategy. The attorney can properly represent the client by preparing the case based on information that relates to the case, thus giving the client the full advantage of the legal system. *Id.* at 389–390, 101 S.Ct. 677.[4]

In *Upjohn*, the United States Supreme Court held that communications between the corporation's employees and corporate counsel were protected from compelled disclosure. The protected communications in *Upjohn* concerned "matters within the scope of the employees' corporate duties" and were procured in order for the corporation to obtain legal advice. *Id.* at 394, 101 S.Ct. 677. The Court stated

> "[m]iddle-level—and indeed lower-level—employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties."

*Upjohn*, 449 U.S. at 391, 101 S.Ct. 677. The court held that in order not to frustrate the purpose of the privilege, these communications must be protected to prevent "discouraging the communication of relevant information by employees of the client to attorneys seeking to render legal advice to the client corporation." *Id.* at 392, 101 S.Ct. 677. The Court reasoned that when corporate counsel is faced with the corporations' legal difficulties, counsel would find it necessary to interview those employees in the lower echelon and involved in the day-to-day operation of the corporation. These employees are likely to possess relevant information that will assist corporate counsel in assessing and solving the corporations legal problem. *Id.*

This case is similar to that of a corporation whose employees are alleged wrongdoers or know of relevant facts of the alleged wrongdoing. The Government functions through its employees; it lives or dies by the acts of its employees. The USAO in its representation of the United States needs full and frank disclosure by the employee/physician in order to properly give sound legal advice to the United States. In this case, the alleged negligent physicians are employees of the United States who operated on Galarza and were her treating physicians. In addition, Galarza's treating physicians prior to and following the surgery are employees of the United States. The communications sought by the United States concern matters within the scope of the employee/physician duties during the treatment of Galarza. The USAO must be fully informed of all that relates to the matter to represent the United States with any effectiveness. The United States Supreme Court has recognized that under public policy, and to promote the administration of justice, these types of communications between employees and corporate counsel are protected against compelled disclosure under the attorney-client privilege. *Id.* at 389, 101 S.Ct. 677.[5]

***

4. For the purpose of the attorney client privilege, an agency is a "client" under federal law. *Maricopa Audubon Society v. United States Forest Service*, 108 F.3d 1089, 1092 (9th Cir.1997).

5. However, as a limitation, the Court added "[t]he privilege only protects disclosure of communications; it does not protect disclosure of underlying facts by those who communicated with the attorney." *Upjohn*, 449 U.S. at 395, 101 S.Ct. 677.

Galarza's concern that there is no safeguard in this process because the government employed physicians are not personally liable to her is unfounded. The general notion of Galarza's right to privacy cannot be undermined. Remedies exist for any unethical conduct engaged in by the attorneys or physicians, for example if they delve into areas irrelevant to this litigation or reveal unnecessary medical history. As such, there is no need to abrogate the attorney-client privilege of the United States, in order to protect Galarza's interests.

### *Conclusion*

Galarza's has chosen to sue the United States under FTCA. Because the United States consents to be sued in federal court it has set forth the rules and conditions. Galarza has cited no controlling authority to override the current state of federal law. Galarza has not provided any unique or compelling reasons why the Court should depart from the Federal Rules of Civil Procedure or case law, and prohibit ex parte communications by the United States with Galarza's physicians. Further, established case law requires that the communication with the employee/physicians be covered by the attorney-client privilege. Therefore, the requested Protective Order is **DENIED.**