**PLAYBOY ENTERPRISES, INC., Plaintiff,**

v.

**Terri WELLES, et al, Defendants.**

**No. Civ. 98–0413–K (JFS).**

United States District Court,
S.D. California.

Aug. 2, 1999.

Juanita Brooks, San Diego, CA, for Plaintiff.

Dorothy A. Johnson, San Diego, CA, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S REQUEST FOR DISCOVERY**

STIVEN, United States Magistrate Judge.

**I.**

**INTRODUCTION**

On July 21, 1999, a discovery conference was conducted in Courtroom E, before the Honorable James F. Stiven, United States

Magistrate Judge. Ms. Juanita R. Brooks appeared on behalf of Plaintiff Playboy Enterprises. Ms. Dorothy A. Johnson appeared on behalf of Defendants Terri Welles and Terri Welles, Inc.[1] Plaintiff requested the discovery hearing to address four issues: (1) whether Plaintiff could have access to Defendant's hard drive to attempt to recover e-mails Defendant has deleted which may be relevant for discovery in this action; (2) whether Plaintiff could discover Defendants' federal and state income tax returns; (3) to ask the Court to require Defendant to respond to Plaintiff's Interrogatory Number 24, which requests that Defendant provide the factual basis for denying Plaintiff's Request for Admissions Numbers 1 and 2, and Interrogatory Number 25, which demands that Defendant update and/or correct prior discovery responses; and (4) whether Plaintiff could propound three additional interrogatories to Defendant relating to Defendant's claims for emotional distress based on attorney's fees she has incurred during this litigation. Having considered the written submission of the parties and heard oral argument, the Court **FINDS** and **ORDERS** as follows:

## II.

## BACKGROUND

Plaintiff, Playboy Enterprises Incorporated, owns and utilizes the trademarks Playboy, Playmate, Playmate of the Month, and Playmate of the Year, in connection with Playboy Magazine and various goods and services sold by Plaintiff and/or its licensees. Defendant, Terri Welles, posed in Playboy magazine as a Playmate of the Month model in 1980 and was designated Playmate of the Year in 1981. Defendant has established and is operating a personal website on the Internet. Plaintiff alleges that Defendant has used and continues to use Plaintiff's Playboy and Playmate trademarks throughout her website, without authorization from Playboy. Plaintiff claims that Defendant is infringing on its trademarks, diluting its trademarks, and is unfairly competing with Plaintiff. Defendant has counterclaimed for damages due to defamation, interference with prospective business advantage, intentional infliction of emotional distress, and unfair competition.

The discovery conference was requested by Plaintiff when Plaintiff learned that Defendant Welles may have in the past deleted, or continues to presently delete, e-mail communications which have been requested for production by Plaintiff. In response to a request for production of documents, Co–Defendant Huntington produced two e-mail communications between Defendant Welles and Janey Huntington that Defendant Welles had not produced herself. Plaintiff contacted Defense counsel to inquire why these e-mails had not been produced by Defendant. It appears to the Court that during meet and confer attempts between counsel during May and June 1999, Plaintiff learned from Defendant's counsel that Defendant has had a custom and practice of deleting electronic mail soon after sending or receiving e-mail. Plaintiff asserts that Defendant has continued this practice throughout the litigation, irrespective of whether the e-mail is responsive to Plaintiff's request for production of documents. Plaintiff requests access to Defendant's personal computer hard drive to make a "mirror image" of the hard drive, and then have Defense counsel review the recovered e-mails to produce relevant and responsive documents.

Plaintiff also requests that Defendant produce her personal and corporate income tax statements. Plaintiff has requested financial information from Welles, but alleges that Welles has failed to provide sufficient information for Plaintiff to determine the damages it has allegedly suffered due to Defendant's use of Plaintiff's trademarks. Plaintiff also asserts that such financial information is relevant to claims raised by Defendants' counterclaims.

1. Except where necessary to distinguish, defendants will be referred to in the singular.

Third, Plaintiff requests the Court to order Defendant to respond to Interrogatory Number 24, which requests that Defendant provide the factual basis for denying Request for Admission Numbers 1 and 2. Requests for Admission Number 1 asks Defendant to admit for purposes of Defendant's defamation claim that she is a "public figure" as defined in *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). Request for Admission Number 2 asks Defendant to admit that a specific contract required that she or Pippi, Inc. obtain written permission from Playboy Enterprises before Defendant used her name with the designation "Playmate of the Year." Plaintiff asserts that these requests were denied by Defendant without objection, but she did not provide the facts on which her denial is based. Plaintiff also requests Defendant to respond to Interrogatory Number 25, which requested that Defendant update and/or correct prior discovery responses.

Lastly, Plaintiff asks that the Court allow Plaintiff to propound three additional interrogatories on Defendant relating to Defendant's claim for emotional distress, for which damages are based, in part, on the attorneys' fees she has paid and incurred. Plaintiff alleges that it did not have the opportunity to ask Defendant about these fees earlier because Plaintiff only recently learned of this claim of emotional distress based on attorneys' fees incurred after receiving notes from Defendant's psychologist, Dr. Sears.

### III.

### DISCUSSION

**A.** *Recovery of Deleted E-mails from Defendant's Hard Drive*

Plaintiff requests that it be able to access Defendant's hard drive to attempt to recover deleted files which may be stored on the hard drive of Defendant's personal computer.

*1. Plaintiff's Request is Not Procedurally Defective*

Defendant first argues that any request to compel information from the hard drive is procedurally defective because Plaintiff has never made a request for information specifically relating to the hard drive pursuant to Fed.R.Civ.P. 34. However, the Court finds this argument is without merit. Plaintiff's Third Set of Requests for Production of Documents to Defendant contained comprehensive requests for production of documents relating to documented communications between Defendants, between Defendant and non-parties, and documents and communications relating to financial, marketing, development, trademark, advertisement, and promotional issues pertaining to Defendant's website, as well as any documents or communications relating to Plaintiff, the instant litigation, or any issues raised therein. In response to these interrogatories, Plaintiff contends that Defendant has produced very few e-mails or hard copies of computer files to Plaintiff.[2] In Defendant's July 9, 1999 Declaration in Opposition to Motion to Compel Certain Discovery, she stated "I obtained the computer in about April, 1997. Since that time, it has been my custom and practice to delete incoming e-mail after I have read it and to delete outgoing e-mail after I have sent it." In addition, Defendant stated "I then delete from the 'trash' section of the computer the e-mail which I have deleted from the e-mail mailbox. This is been my practice at all times, including August and September of 1997."

Federal Rule of Civil Procedure 34 governs the scope and procedure for the production of documents. This rule allows a party to ask another party "to produce and permit the party making the request ... to inspect and copy, any designated documents, ... or to inspect and copy, test, or sample any tangible things which consti-

---

**2.** In oral argument, Plaintiff's counsel represented that she believed Welles had produced two e-mails.

tute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served." Fed.R.Civ.P. 34(a)(1). The Advisory Committee Notes for Fed.R.Civ.P. 34 address how information stored as electronic data is discoverable.

> The inclusive description of "documents" is revised to accord with changing technology. It makes clear that Rule 34 applies to electronics data compilations from which information can be obtained only with the use of detection devices, and that when the data can as a practical matter be made usable by the discovering party only through respondent's devices, respondent may be required to use his devices to translate the data into usable form. In many instances, *this means that respondent will have to supply a print-out of computer data.* The burden thus placed on respondent will vary from case to case, and the courts have ample power under Rule 26(c) to protect respondent against undue burden or expense, either by restricting discovery or requiring that the discovering party pay costs. Similarly, if the discovering party needs to check the electronic source itself, the court may protect respondent with respect to preservation of his records, confidentiality of nondiscoverable matters, and costs.

(Emphasis added.)

■ The Court finds that by requesting "documents" under Fed.R.Civ.P. 34, Plaintiff also effectively requested production of information stored in electronic form. Had Defendant printed any relevant e-mails, as is directed by the Advisory Notes to Fed.R.Civ.P. 34, such e-mails would

have been produced as a "document". Plaintiff needs to access the hard drive of Defendant's computer only because Defendant's actions in deleting those e-mails made it currently impossible to produce the information as a "document". This Court finds that Plaintiff's prior discovery request satisfies any procedural requirement under Fed.R.Civ.P. 34.

### 2. *Information on Defendant's Hard Drive is Discoverable*[3]

Under Federal Rule of Civil Procedure 26, parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending litigation."

The Court finds it likely that relevant information is stored on the hard drive of Defendant's personal computer. Defendant uses her e-mail system for both business and personal communications. In Defendant's July 9, 1999 Declaration, she stated, "Since first acquiring the computer, I have routinely used it for personal as well as business matters." This business use is further illustrated by the April 2, 1999, e-mail sent by Defendant Welles to Co–Defendant Mihalko, when Defendant Welles asked Mihalko to place "one of Doria's banners on my home page when you get the chance." [4]

■ The Advisory Committee Notes to Fed.R.Civ.P. 34 referenced above makes it clear that information stored in computer format is discoverable. Defendant has cited no cases finding that electronically stored data is exempt from discovery. The only restriction in this discovery is that the producing party be protected against undue burden and expense and/or invasion of privileged matter. In deter-

---

**3.** At the July 21, 1999 discovery hearing, this Court allowed Defendant the opportunity to submit supplemental points and authorities to support its position that Plaintiff' request is procedurally defective. However, Defendant took the opportunity to submit additional briefing on other issues concerning the e-mail recovery. Regardless, this Court reviewed Defendant's entire supplemental brief, and

while the Court considered these issues prior to the hearing, the Court has attempted to specifically respond to Defendant's concerns.

**4.** This e-mail was produced to Plaintiff by Co–Defendant Mihalko in response to Plaintiff's requests for production of documents. It is implied by Plaintiff's brief that Defendant Welles did not produce this document.

mining whether a request for discovery will be unduly burdensome to the responding party, the court weighs the benefit and burden of the discovery. Fed.R.Civ.P. 26(b)(2). This balance requires a court to consider the needs of the case, the amount in controversy, the importance of the issues at stake, the potential for finding relevant material and the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P. 26(b)(2).

Plaintiff asserts that these e-mails may provide evidence in support of its trademark infringement and dilution claims, as well as a defense to Defendant's claim for emotional distress. Plaintiff believes that these e-mails may reflect Defendant's knowledge of the "Playmate of the Year" contract, and imply that she knew the contract required her to obtain written approval from Plaintiff before she could use the "Playmate of the Year" designation. Plaintiff also believes these e-mails may negate Defendant's emotional distress claim because they will indicate her state of mind regarding issues addressed in the lawsuit. Finally, Plaintiff believes that the e-mails may support Plaintiff's position that visitors to Defendant's website will view the website as associated with hard core pornography.

Defendant contends that her business will suffer financial losses due to the approximate four to eight hour shutdown required to recover information from the hard drive. Defendant also contends that any recovered e-mails between her and her attorneys are protected by attorney-client privilege. Lastly, Defendant contends that the copying of her hard drive would be an invasion of her privacy.[5]

■ Considering these factors, the Court determines that the need for the requested information outweighs the burden on Defendant. Defendant's privacy and attorney-client privilege will be protected pursuant to the protocol outlined below, and Defendant's counsel will have an opportunity to control and review all of the recovered e-mails, and produce to Plaintiff only those documents that are relevant, responsive, and non-privileged. Any outside expert retained to produce the "mirror image" will sign a protective order and will be acting as an Officer of the Court pursuant to this Order. Thus, this Court finds that Defendant's privacy and attorney-client communications will be sufficiently protected. Further, Plaintiff will pay the costs associated with the information recovery. Lastly, if the work, which will take approximately four to eight hours, is coordinated to accommodate Defendant's schedule as much as possible, the Court finds that the "down time" for Defendant's computer will result in minimal business interruption.

The Court ORDERS the parties to follow this protocol:

1. First, the Court recognizes Defendant's concern, and argument, that the e-mail recovery simply is not feasible. (*See* Declaration of Richard K. Myers.) However, this Court believes that the probability that at least some of the e-mail may be recovered is just as likely, if not more so, than the likelihood that none of the e-mail will be recovered. To some degree, the burden of attempting the recovery must fall on Defendant as this process has become necessary due to Defendant's own conduct of continuously deleting incoming and outgoing e-mails, apparently without regard for this litigation. (This Court notes that Defendant's declaration did not indicate that Defendant has considered the subject matter of any e-mail, and its relationship to this litigation, before deleting it.) However, to ensure that this Court's assumption is correct, Plaintiff shall, as a predicate to further discovery, submit a declaration from the expert on which it relied in making this motion, to address both Defendant's and the Court's feasibility concerns. Plaintiff shall submit such a declaration by *August 6, 1999.* Presuming Plaintiff can provide the Court with suffi-

---

5. In her supplemental letter brief of July 24, Defendant also argued (and presented an ex-

pert declaration) that asserted that the recovery of deleted e-mail was "unlikely."

cient evidence that recovering some deleted e-mail is just as likely as not recovering any deleted e-mail, and that no damage will result to Defendant's computer, the Court will direct the parties to follow this outlined protocol.

2. The Court will appoint a computer expert who specializes in the field of electronic discovery to create a "mirror image" of Defendant's hard drive. The Court requests the parties to meet and confer to agree upon the designation of such an expert.[6] If the parties cannot agree on an expert, the parties shall submit suggested experts to the Court by *August 13, 1999.* The Court will then appoint the computer specialist.

3. The Court appointed computer specialist will serve as an Officer of the Court. To the extent the computer specialist has direct or indirect access to information protected by the attorney-client privilege, such "disclosure" will *not* result in a waiver of the attorney-client privilege. Plaintiff herein, by requesting this discovery, is barred from asserting in this litigation that any such disclosure to the Court designated expert constitutes any waiver by Defendant of any attorney-client privilege. The computer specialist will sign the protective order currently in effect for this case. Lastly, any communications between Plaintiff and/or Plaintiff's counsel and the appointed computer specialist as to the payment of fees and costs pursuant to this Order will be produced to Defendant's counsel.

4. The parties shall agree on a day and time to access Defendant's computer. Plaintiff shall defer to Defendant's personal schedule in selecting this date. Representatives of both parties shall be informed of the time and date, but only Defendant and defense counsel may be present during the hard drive recovery.

5. After the appointed computer specialist makes a copy of Defendant's hard drive, the "mirror image" (which the Court presumes will be on or transferred to a disk) will be given to Defendant's counsel. Defendant's counsel with print and review any recovered documents and produce to Plaintiff those communications that are responsive to any earlier request for documents and relevant to the subject matter of this litigation. All documents that are withheld on a claim of privilege will be recorded in a privilege log.

6. Defendant's counsel will be the sole custodian of and shall retain this "mirror image" disk and copies of all documents retrieved from the disk throughout the course of this litigation. To the extent that documents cannot be retrieved from defendant's computer hard drive or the documents retrieved are less than the whole of data contained on the hard drive, defense counsel shall submit a Declaration to the Court together with a written report signed by the designated expert explaining the limits of retrieval achieved.

7. The Court orders that the "mirror image" copying of the hard drive, and the production of relevant documents, shall be completed by *September 10, 1999.*

## B. *Defendant's Tax Returns*

Plaintiff seeks to discover Defendant's personal and corporate income tax returns. Plaintiff has requested financial information from the Defendant, but alleges it has failed to receive sufficient information to determine the damages it has allegedly suffered due to Defendant's use of Plaintiff's trademarks. Plaintiff also asserts that this financial information is important to defend against Defendant's claims of damages from economic loss and/or emo-

---

**6.** Defendant asserts that the computer expert may be acting as an agent of Plaintiff because Plaintiff will be paying the costs. However, the Court finds this argument is moot, as the computer expert will either be agreed to by both parties or appointed by the Court and will act as an Officer of the Court. Further,

Defendant's attorney-client privilege and privacy concerns will be protected by the protective order, which will be signed by the expert, and this Court's Order finding that this process will not waive any attorney-client privilege.

tional distress based on Plaintiff's actions and this litigation.

Plaintiff claims that the income tax returns are necessary to determine its damages suffered under their federal claims of trademark infringement and dilution, as well as to defend against Defendant's state claims of economic loss and emotional distress. Specifically, this Court notes that the financial information in Defendant's tax returns are related to Plaintiff's damages sought under § 43(a) of the Lanham Act. Actions for damages sought under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) are governed by § 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). This section provides in relevant part:

> When a violation of any right [under § 43(a) occurs] . . ., the plaintiff shall be entitled, . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

In *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 969 (D.C.Cir.1990) (citations omitted), the court stated that actual damages in false advertising cases under § 35(a) can include: 1) profits lost by the plaintiff on the sales actually diverted to the false advertiser; 2) profits lost by the plaintiff on sales made at prices reduced as a demonstrated result of the false advertising; 3) the costs of the completed advertising that actually and reasonably responds to the defendant's offering ads; and 4) quantifiable harm to the plaintiff's good will, to the extent that completed corrective advertising has or repaired that harm. Thus, at a minimum, information from Defendant's tax returns

establishing Defendant's profits are relevant to this action.

■■■ The Court finds that as the information contained in the income tax returns relate to both federal and state claims, federal privilege law governs this discovery issue.[7] The need for consistency requires federal courts to apply federal privilege policies, rather than state privilege law, where evidence goes to both state and federal claims. *Platypus Wear Inc. v. K.D. Company Inc.*, 905 F.Supp. 808, 811 (S.D.Cal.1995). Under federal law, tax returns are not privileged. Tax returns are generally discoverable where necessary in private civil litigation. *Young v. U.S.*, 149 F.R.D. 199, 201 (S.D.Cal.1993). In *St. Regis Paper Company v. United States*, the United States Supreme Court found that although tax returns are made confidential within the government bureau, copies in the hands of the tax payer are subject to discover. *St. Regis Paper Company v. United States*, 368 U.S. 208, 217, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961).

This Court ORDERS Defendant to produce to Plaintiff the 1997 Corporate Income Tax Return for Terri Welles Inc., and to submit her 1996, 1997, and 1998 Personal Income Tax Returns to the Court for *in camera* review. Defendant must produce these documents by ***August 13, 1999***.[8] The Court will determine which, if any, business related information contained in the tax returns should be produced to Plaintiff. Defendant shall also produce to Plaintiff the 1998 Corporate Income Tax Return for Terri Welles Inc.,

---

7. Defendant argues that at first Plaintiff requested this information only as it related to Defendant's state claims. However, as stated above, this information is also relevant to Plaintiff's federal claims. In addition, Defendant argues that her personal income taxes are not relevant to Plaintiff's federal claims and therefore should be protected. Plaintiff represented to this Court in the July 21, 1999 discovery hearing that Defendant's accountant had testified that Defendant's 1997 personal income tax return included financial information relevant to the website. There-

fore this Court finds that the personal and income tax returns of Defendant are relevant to Plaintiff's federal claims.

8. If either of the 1996, 1997 or 1998 personal tax returns of Ms Welles contain *no* information pertaining to business income associated with the subject website (such as a Schedule C or otherwise) Defendant may avoid the necessity of *in camera* review by submitting a Declaration stating that any such return, including all attached schedules, contains no such information.

when filed, even if this date is beyond the discovery cut-off set for this litigation.

## C. *Statutory limit on interrogatories*

Plaintiff requests that the Court require Defendant to answer Interrogatory Number 24 as it relates to Request for Admission Number 1 and Number 2. Request for Admission Number 1 asks Defendant to admit that she is a public figure as defined in *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). Request for Admission Number 2 asks Defendant to admit a specific contract required that she or Pippi, Inc. obtain written permission from Playboy Enterprises before she used her name with the designation "Playmate of the Year." Interrogatory Number 24 states "If any of Your responses to the requests for admission served with these interrogatories are not unqualified admissions, please State All Facts upon which those responses are based." In Defendant's 'Response to Plaintiff's Requests for Admissions, Defendant simply denied the Requests for Admissions.

■ Requests for admissions cannot be used to compel an admission of a conclusion of law. *Reliance Ins. Co. v. Marathon LeTourneau Co.,* 152 F.R.D. 524, 525 (S.D.W.Va.1994) In addition, the Advisory Committee Notes to the 1970 Amendment of Federal Rule of Civil Procedure 36 states that although an admission of a matter involving the application of law to fact may narrow the issues for trial, "requests for admission involving the application of law to fact may create disputes between the parties which are best resolved in the presence of the judge after much or all of the other discovery has been completed."

■ Plaintiff asserts that Defendant never objected to these Requests for Admissions in any way. Instead Defendant denied the allegation, but refuses to respond to Interrogatory Number 24 and provide the factual basis for her denial. The Court determines that both of these Requests for Admissions requires Defen-

dant to make a conclusion of law. However, Defendant must either provide factual information to support a denial, or appropriately object to the Requests. Defendant shall submit supplemental responses to Requests for Admission Numbers 1 and 2, and Interrogatory Number 24 as it relates to these Requests, outlining the basis for an admission or denial, or the basis for an objection to these Requests. These supplemental responses shall be produced by *August 20, 1999.*

Interrogatory Number 25 asked Defendant to amend any responses to previous interrogatories that were no longer accurate or complete. Such an interrogatory is unnecessary. The Court reminds both parties that they are under a continuing duty to amend their prior responses to interrogatories, requests for production, or requests for admission if the party learns that the earlier response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. Fed.R.Civ.P. 26(e)(2).

## D. *Plaintiff's request for three additional interrogatories*

Plaintiff requests that the Court allow Plaintiff to propound three additional interrogatories on Defendant. Plaintiff claims that the need for these additional interrogatories is to defend against Defendant's claims of emotional distress, which is due, in part, from attorneys' fees and costs Defendant has incurred in this litigation. Plaintiff's three additional interrogatories request information related to determining the amount of money Defendant has paid to her attorneys, the amount of fees she has incurred to date, and the amount of fees that has been paid by third parties.

In response to Plaintiff's request, Defendant's counsel stated in court during the hearing on this proceeding that these additional interrogatories are not necessary because Defendant does not intend to intro-

**1058**

duce evidence of attorneys' fees paid or incurred by Defendant to support her claim of emotional distress. Therefore this Court finds it unnecessary to make any ruling on this issue.

## IV. CONCLUSION

Plaintiff shall submit a declaration supporting its assertions that deleted e-mail recovery is feasible from a computer's hard drive. Presuming that Plaintiff can provide such a declaration, the Court orders that a "mirror image" of Defendant's hard drive will be made by a computer specialist trained in the area of data recovery. This Court appointed specialist will act as an Officer of the Court. The "mirror image" copy will be given to Defendant's attorney to print, review, and produce to Plaintiff all relevant, requested, and non-privileged documents. Plaintiff will pay for the costs associated with the production of the "mirror image." Defendant will produce to Plaintiff the 1997 corporate income tax return for Terri Welles, Inc. and the 1998 corporate tax return when filed with the Internal Revenue Service. In addition, Defendant will produce to the Court her 1996, 1997, and 1998 personal income tax returns for *in camera* review. Defendant shall submit supplemental responses to Interrogatory Number 24 and Requests for Admission Numbers 1 and 2, either appropriately objecting to the Requests or setting forth the factual basis for Defendant's admittance or denial. Based on Defendant's in court statements, the Court finds it unnecessary to make any ruling on whether Plaintiff can propound three additional interrogatories relating to Defendant's attorneys' fees.

**IT IS SO ORDERED.**